[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The parties were married on December 23, 1967 in Cambridge, Massachusetts. They have two children both now grown, a son who was over the age of 18 at the time of the trial and is a student at the University of Michigan and a daughter who is now a freshman at Wellesley College. The daughter has had significant health problems since birth, which have required numerous operations, hospital stays, physical therapy, and an enormous commitment of time and energy chiefly by her mother. When not away at college, the daughter does reside with the mother. The parties have been living separate and apart since this action was initiated in September 1998.
The husband is 58 years old and in apparent good health. He is well educated and holds a Bachelor's Degree from the University of Michigan, a Law Degree from Harvard, a Master of Law in Taxation from New York University School of Law, and a Master's in accounting from Northwestern. In addition, he is a C.P.A. At the time of their marriage, the husband was serving in the United States Navy, however upon discharge he has worked at various times for Arthur Young, Texaco, Inc., and most recently as a tax partner of Ernest Young in the international tax group, from which position he voluntarily retired in 1997. In 1996 he reported $348,000 in gross income. His area of expertise was the design of tax shelters. Upon separation, he received the balance of his capital account and profit sharing plan which totaled over $180,000. After retirement he worked for a short time designing tax software, and he has maintained a consultancy relationship with Dresdner Kleinwort Benson. However, according to his testimony, the climate for tax shelters is not favorable, and he has been unable to market his product. The husband testified that he had taken no steps to obtain any other job in the year CT Page 14624 2000, nor did he have any intention to seek employment. Since September 1998, he has received regular and substantial payments from his mother totaling $280,000, which he has characterized as loans, however, the court does not find his testimony to be credible on this point and finds these payments to be in the nature of gifts. As evidence of this, he testified that he has not paid any interest to her. In addition to the payments from his mother, the husband testified that he is eligible to receive a pension from Ernst Young commencing this past October, which if paid as a single life annuity, would give him an annual income of $69,000. Since the separation of the parties the husband has traveled extensively in Europe, taken ski vacations out west, and indulged himself in his admitted fondness for the opera. He has filed no income tax returns since 1996.
The wife is 54 years old also in good health. She too is well educated, and holds an MBA from Harvard University. She has worked throughout the marriage beginning as a teacher at the Topsham School while her husband was stationed at the Brunswick Naval Air Station. She has taught at various levels. At one point she left teaching to work in the Development Office of the University of Connecticut where she was paid between $37,500 and $41,300. She received a raise no pension from that corporation. In fact, he further testified that he had not even inquired as to whether or not he is eligible for such a pension.
A significant bone of contention in the marriage was the husband's support for a local chapter of the "I Have a Dream Foundation." While both parties were initially actively involved in this organization, it became apparent to the wife that the husband's financial support for this organization became nearly obsessive and resulted in a serious depletion of some significant family assets, in particular several condominiums, which she testified had originally been investments for their children's college education. The parties donated the proceeds from the sale of two of these units in fill, and when the husband attempted to donate the proceeds from a third one in 1999, the wife refused to participate in that transfer and insisted on being paid her share. The purpose of the Foundation is to "adopt" a class of underprivileged youths during the primary school years, to follow their progress, and to underwrite the future education of its members. The wife severed her relationship with the organization in June of 1998, citing philosophical differences with her husband. In addition, she had many practical concerns for the future after the husband adopted a second class of students, and he proposed to adopt a third. When she refused to cooperate in this venture, the husband humiliated her by conducting a mock trial of her in front of her children, which she described as "outrageous."
The wife describes the breakdown as attributable to an absence of CT Page 14625 "fundamental communication" and "a lack of respect for her as a person." For instance, he insisted that she change her style of dress and the color of her hair. She described her husband as "failing to be a partner, " and that she was "mentally abused and could not stand the situation anymore." In addition, financial conflicts played a major role throughout the marriage, the wife testified that even though the husband's earnings were substantial, she had to plow her salary and royalties back into the household expenses prior to obtaining any funds from him. As an example, at the husband's request, the wife took the sum of $57,311.14 from her royalties and gave it to him in April of 1998, to be applied as her portion of the 1997 joint income tax. What happened to the money is unclear, but the husband did not apply it to the taxes. She then filed her own tax single return for 1997 (at an additional expense), as well as 1998 and 1999.
 FINDINGS
The Court, having heard the testimony of both parties, and having considered the evidence presented at hearing, as well as the factors enumerated in Sections 46b-56, 46b-8 1, 46b-82, 46b-84, and 46b-215a of the Connecticut General Statutes, including the Child Support and Arrearage Guidelines Regulations, hereby makes the following findings:
1. That it has jurisdiction.
2. That the allegations of the complaint are proven and true.
3. That the marriage of the parties has broken down irretrievably, and that ample evidence exists that both parties have contributed to said breakdown.
4. That as of the date of this Memorandum of Decision, the youngest child shall has reached her majority and graduated from high school, and therefore, it is appropriate that no child support be awarded.
5. That the royalties and other income received by the wife from her publications is derived wholly from her efforts, and that the husband's contribution to the acquisition and preservation of this asset was at best de minimus.
6. That since the separation of the parties in September 1998, the husband has received regular and consistent gifts from his mother in the amount of approximately $10,000 — $12,500 per month; and that while the husband submitted testimony and evidence that the monies were in the nature of loans, the court does not find the husband's testimony and evidence credible on this issue; that the monies are in the nature of CT Page 14626 gifts; and that it would be appropriate for the court to take these monies into consideration in its determination of the resources available to the husband for his support.
7. That both parties have a demonstrated earning capacity and an ability to support themselves, and in light of their respective education, ages and apparent good health and that therefore, in spite of the length of the marriage, an award of periodic alimony to either is not warranted.
8. That each party has made significant contributions to the purchase, improvement, and maintenance of the marital real estate at 22 Briar Brae Road, Stamford, and that, in addition, the wife has expended from her separate funds at least $46,000 toward the reinstatement of the mortgages, $13,000 in back real estate taxes, and $5000 in fix-up repairs prior to closing, for a total of $64,000, and that it would be equitable and appropriate to take these sums into consideration in dividing the net proceeds from the sale of same now held in escrow.
9. That the husband transferred two timeshares at Snowbird Resort in Utah having a fair market value of approximately $31,000 each, and a net value of $10,000 each, after the existing mortgage to his son Michael in August 1998, an that said transfers were made in contemplation of the action for dissolution and for less than adequate consideration, and that it would be equitable and appropriate to pay to the wife from the husband's share of the net proceeds from the Stamford real estate the sum of $10,000.
10. That in April 1998, the wife gave the husband a check in the amount of $57,311.14 to be applied to her share of the 1997 joint tax liability and that the husband did not apply such funds to that purpose, and that the wife was forced to file separately and to pay additional taxes, and that it would be equitable and appropriate to take this into consideration in the division of the marital assets.
11. That the husband's testimony regarding his lack of a pension or other retirement benefits from his former employer, Texaco, Inc., and that he has made no inquiry regarding this issue, is totally lacking in credibility.
 ORDER
IT IS HEREBY ORDERED THAT:
1. The marriage of the parties is hereby dissolved, and they are each hereby declared to be single and unmarried. CT Page 14627
2. No alimony is awarded to either party.
3. The net proceeds from the sale of the jointly-owned real estate located at 22 Briar Brae Road, Stamford, Connecticut, amounting to $210,000, together with any accrued interest thereon, which are currently held in escrow, shall be divided as follows. From the net proceeds shall be paid:
i. the sum of $10,000 to be applied toward the wife's attorneys fees and costs.
ii. The sum of $100,000 to the wife to reimburse her for expenditures to reinstate the mortgage and home equity line, payment of back real estate taxes, fix-up repairs, and monies delivered to the husband to pay the joint 1997 income taxes.
iii. The balance shall be divided 50% to the husband and 50% to the wife. However, PRIOR TO ANY DISBURSEMENT TO THE HUSBAND OF HIS SHARE, the escrow agent shall pay to the wife from the husband's share, the additional sum of $10,000. In addition, to the extent permitted bylaw, the wife shall be entitled to claim the entire deduction for mortgage interest and real estate taxes on the former marital home at 22 Briar Brae Road, Stamford, Connecticut, on her state and federal income tax returns for the year 2000.
4. Except as otherwise set forth herein, personal property shall be divided as follows:
A. The wife shall be entitled to keep her mink coat, and jewelry, free and clear of any claims by the husband.
B. The home furnishings, including the piano, oriental rugs and antiques, shall be divided as nearly equally as possible. In the event that the parties are unable to agree upon a division, the issue is hereby referred to Family Relations for resolution and recommendation.
C. Each party shall be entitled to keep the automobile which they are currently driving free and clear of any claims by the other, and each party shall cooperate with the other regarding the execution of any documentation necessary to transfer and/or register same, and furthermore, each party shall indemnify and hold the other harmless from any liability arising out of a loan or lease made in connection therewith.
D. The balances in the Schwab Money Market Account and the First CT Page 14628 Union CAP Account, as of the date of this Memorandum of Decision, standing in the name of the wife shall be divided 25% to the husband and 75% to the wife.
5. The wife shall be entitled to any and all rights in and to all of her published works, including, but not limited to the two high school social studies textbooks, such rights to include royalties and fees derived therefrom and received after the date of this Memorandum of Decision, free and clear of any claims by the husband. The husband shall be entitled to any and all rights in and to any tax shelter software product, including any royalties and licensing fees derived therefrom, free and clear of any claims by the wife.
6. Retirement Accounts:
A. As to the Ernst Young Partner Retirement Plan: Effective as of the date of this Memorandum of Decision, that portion of the Ernst 
Young Partner Retirement Plan ("Plan")of the husband through his former employer and vested and accrued as of the date of this Memorandum of Decision, shall be divided by means of a Qualified Domestic Relations Order ("QDRO") which shall be prepared by the wife's attorney, 55% to the husband and 45% to the wife. Unless the parties shall otherwise agree, the husband shall elect a joint and survivor annuity, in a form which provides the maximum monthly benefit to the wife for her lifetime, and in the event that the husband shall predecease the wife prior to drawing his pension, the wife shall be entitled to 100% of the survivor benefit. The wife and her attorney shall be entitled to any and all information regarding the Plan necessary to the preparation and filing of the QDRO. The Court shall retain jurisdiction to deal with any issues which may arise with regard to the preparation and filing of the QDRO and the division of the Plan.
B. As to any Texaco, Inc. retirement benefit: In the event that the husband is entitled to a pension or other retirement benefit arising out of his service with Texaco, Inc., it is the intention of this court that any or all such benefits shall be divided in the same manner and proportion as the Ernst Young pension, and the court shall retain jurisdiction to deal with any issues which may arise with regard to the preparation and filing of the QDRO and the division of the plan(s).
C. As to the TIAA CREF 403(b): The wife shall be entitled to keep this plan free and clear of any claims by the husband.
D. As to the Schwab SEP Account: The wife shall be entitled to keep this plan free and clear of any claims by the husband. CT Page 14629
7. The wife shall promptly notify her employer as to the change of marital status and shall cooperate with the husband in obtaining continuation health insurance coverage as provided by state and federal law. If the husband shall elect such coverage, he shall be responsible for the payment of any premiums.
8. Except as otherwise set forth herein, he parties shall each be responsible for the debts as shown on their respective financial affidavits, and they shall indemnify and hold each other harmless from any further liability thereon. The foregoing notwithstanding, the husband shall be liable for any liability arising out of a joint tax return for the year 1997 (including any interest and penalties) and any indebtedness to his mother, Mary Karls.
9. Except as otherwise set forth herein, each party shall be responsible for their respective attorneys fees and costs incurred in connection with this action.
THE COURT
SHAY, J.
CT Page 14630